LHE:MSM
F. #2019R00489

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | <u>AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT</u> |
| - against - | |
| STEPHEN BURTON,<br>    also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," and | (18 U.S.C. § 1349)<br><br>Docket No. 20-MJ-993 |
| JAMES WELLESLEY,<br>    also known as "Andrew Fuller" and "Andrew Templar," | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

WILLIAM A. BOLINDER, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about and between September 2017 and February 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHEN BURTON and JAMES WELLESLEY, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investor-lenders, and prospective investor-lenders, in term loans, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to

transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since September 2018.  I am currently assigned to an FBI squad that investigates securities fraud, wire fraud and other financial crimes.  During my tenure with the FBI, I have participated in numerous financial fraud investigations and have participated in all aspects of investigations, including conducting surveillance, executing search warrants, debriefing defendants and informants, interviewing witnesses, reviewing and analyzing recorded conversations and analyzing telephone toll information.

2.  I am familiar with the facts and circumstances set forth below from, among other things, my participation in the investigation; discussions with other law enforcement agents; witness interviews; and my review of documents and records collected during the course of the investigation.

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.  Except as specifically set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents.

I.     Relevant Entities, Individuals and Terms

3.     Bordeaux Cellars is the trade name for two private limited companies, Bordeaux Cellars Limited and Bordeaux Cellars London Ltd., registered, respectively, in Hong Kong and London, England.   At all relevant times, Bordeaux Cellars purported to be in the business of brokering term loans between borrowers and investor-lenders that were secured by specific bottles of valuable wine owned by the borrowers.

4.     The defendant STEPHEN BURTON, also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," was the founder and chief executive officer ("CEO") of Bordeaux Cellars.

5.     The defendant JAMES WELLESLEY, also known as "Andrew Fuller" and "Andrew Templar," was, in or about at least August 2016, the chief financial officer ("CFO") and operations manager of Bordeaux Cellars.

6.     Storage Facility-1 is a wine cellarage warehouse that offers wine cellarage services in England.   Storage Facility-1 is an authorized customs warehouse that allows customers to store wine with payment of duty and import value added taxes suspended until the wine is removed from the warehouse.

7.     Storage Facility-2 is a self-storage facility that offers wine cellarage services in England.

II.     The Fraudulent Scheme

8.     From at least on or about and between September 2017 to February 2019, the defendants STEPHEN BURTON, also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," and JAMES WELLESLEY, also known as also known as "Andrew Fuller" and "Andrew Templar," operated Bordeaux Cellars.   According to the

Bordeaux Cellars website, the company was "the first to lend against fine wine," and provided "a unique opportunity for private lenders to earn 9-12% [per annum] gross from a loan fully secured against investment grade wine." The website also stated that Bordeaux Cellars "only lend[s] 35% of the value of the wine, providing [investors] with a 300% margin of security" and that Bordeaux Cellars had lent "over $151,910,079.36" in the "six years" preceding August 2018.

9.  The FBI has interviewed and received information from nine individuals who invested in loans brokered by Bordeaux Cellars ("Victim-1" through "Victim-9", and collectively, the "Victims") by wiring funds to a bank account in the name of Bordeaux Cellars. According to the Victims, at least one of whom lived in the Eastern District of New York at the time of his or her investment, in sum and substance and in part, the defendants STEPHEN BURTON and JAMES WELLESLEY represented to the Victims that:[2] (i) Bordeaux Cellars offered the opportunity to invest in term loans with individual borrowers (or entities controlled by the borrowers), which would generate quarterly interest payments; (ii) the loans would be secured by a chattel mortgage on specific bottles of valuable wine owned by the borrower; (iii) Bordeaux Cellars would have custody of those specific wine bottles from the purported borrower, and would store them in a secure storage facility; and (iv) the size of each loan would be, at most, between 35 percent and 45 percent of the value of the specific bottles of wine Bordeaux Cellars held as collateral, providing a high margin of security in case the borrower failed make the required payments.

---

[2] Victim-9 invested through Bordeaux Cellars because Victim-2, a family member, had previously invested with Bordeaux Cellars and told Victim-9 about the information that had been provided by the defendants. Victim-2 also managed Victim-9's investments for Victim-9.

10. Several of the Victims invested in multiple loans purportedly brokered by Bordeaux Cellars. Until approximately December 2018, the Victims each received the required interest payments and, at the end of the loan term, either received their principal or agreed to roll it over into another loan arranged by Bordeaux Cellars. Beginning in approximately February 2019, each of the Victims stopped receiving interest payments on loans. None of the Victims received a return of their principal on loans outstanding as of February 2019, even though the loans purportedly were issued to 19 different borrowers and purportedly were secured by different sets of valuable wine.

11. The FBI has obtained documents from several of the Victims related to 21 loans arranged by Bordeaux Cellars between March 9, 2018 and January 25, 2019, for which Bordeaux Cellars purportedly had custody of the Secured Wine at Storage Facility-1 (the "Reviewed Loans").[3] In connection with each of the Reviewed Loans, Bordeaux Cellars provided the Victims with the following: (i) a Loan Broker Agreement; (ii) a Facility Letter; and (iii) a Loan Agreement and Chattel Mortgage Deed Over Wine. With limited exceptions,[4] I have reviewed the Loan Broker Agreement, the Facility Letter, the Loan Agreement and Chattel Mortgage Deed Over Wine for each of the Reviewed Loans.

---

[3] The investigation has revealed that Bordeaux Cellars purportedly brokered additional loans in addition to the Reviewed Loans. I have reviewed documentation supporting loans brokered by Bordeaux Cellars dated as early as July 2016. As noted above, in some of these cases, the investor-lenders timely received the required interest payments and a return of the principal at the end of the loan period. In other cases, the investor-lenders received timely payments of interest but, instead of having their principal returned, agreed to have the principal rolled over into another loan. In addition, according to the documents, for some loans, Bordeaux Cellars held the wine serving as collateral at Storage Facility-2.

[4] I have not reviewed the Loan Broker Agreement and Chattel Mortgage Deed

12.     Each Loan Broker Agreement that I have reviewed was written on Bordeaux Cellars letterhead and all but one were electronically signed by the defendant STEPHEN BURTON on behalf of Bordeaux Cellars London Ltd.[5]  The Loan Broker Agreement summarized the key terms of the loan and identified the name, vintage and number of bottles of wine pledged as collateral for that loan (the "Secured Wine"). The specific names, vintages and quantities of bottles making up the Secured Wine for each loan differed. Each Loan Broker Agreement also provided that: (i) the bottles of Secured Wine "have been transferred into [Bordeaux Cellars'] custody at [Storage Facility-1];" (ii) "[i]mmediately following draw-down [of the loan] the [Secured Wine] will be transferred into your name under our Custodian account;" (iii) "[t]he [Secured Wine] will be held on [Bordeaux Cellars'] standard terms and conditions including insurance at full replacement value;" and (iv) "[t]hroughout the term of the Loan [Bordeaux Cellars] will monitor the value of the security to ensure that the [security margin] is being maintained."

13.     Each Facility Letter that I have reviewed was written on Bordeaux Cellars letterhead. All but three were electronically signed by the defendant JAMES WELLESLEY on behalf of Bordeaux Cellars London Ltd. All but one were signed by the defendant STEPHEN BURTON on behalf of the borrower. Like the Loan Broker Agreements, the Facility Letters summarized the key terms of the loan and identified the

---

Over Wine for the Reviewed Loan dated June 20, 2018 and the Facility Letter for the Reviewed Loan dated March 21, 2018.

[5]     The Loan Broker Agreements and Loan Agreement and Chattel Mortgage Deed Over Wine were electronically signed using a service called PandaDoc, which, according to the Victims and/or materials provided to the government by the Victims, then sent the documents to the Victims via email.

name, vintage, and number of bottles of wine pledged as the Secured Wine for that loan. Each Facility Letter also provided that: (i) "the Secured Wines have been transferred into our custody and are held at [Storage Facility-1] where the wines will be stored in your name pending completion of the Chattel Mortgage and the draw-down of the loan.  Thereafter title to the wines will be transferred into our Custodian account and be held in the name of the Lender, subject to the rights and obligations set out in the Chattel Mortgage . . . ;" (ii) "[t]he Loan is offered on condition that the total sum outstanding is [35% to 45%] of the value of the Secured Wines" (i.e., the loan-to-value ratio); and (iii) if the amount outstanding compared to the value of the Secured Wine exceeded the specified loan-to-value ratio, and the borrower failed to take actions to restore the proper ratio, Bordeaux Cellars could sell the Secured Wine to repay the investor-lender, or transfer the Secured Wine to the investor-lender.

            14. Each Loan Agreement and Chattel Mortgage Deed Over Wine that I have reviewed also was written on Bordeaux Cellars letterhead and all but one were electronically signed by the defendant STEPHEN BURTON on behalf of the borrower.  The defendant JAMES WELLESLEY electronically signed the Loan Agreement and Chattel Mortgage Deed Over Wine as a witness for 17 of the Reviewed Loans.  Each Loan Agreement and Chattel Mortgage Deed Over Wine set out the terms of the loan and mortgage, identified the name, vintage and number of bottles of wine pledged as collateral for that loan (i.e., the Secured Wine), and provided, among other things, that: (i) the borrower granted a security interest, "by way of first legal mortgage" in the Secured Wine; (ii) a "precondition" of the loan was that "the Secured Wine has been received at the [Storage Facility-1]; (iii) Bordeaux Cellars "will hold the Secured Wine at the [Storage Facility-1]

8

under its Custodian's account in the name of the Lender" during the term of the loan; and (iv) the "Secured Wine has been placed in the name of the Lender under the Custodian's account at the [Storage Facility-1.]"

15. For each of the Reviewed Loans, the date, the loan amount and currency, and the number of bottles of Secured Wine pledged as collateral are set forth in the following table:

| Date | Currency | Loan Amount | Bottles Pledged as Secured Wine |
|---|---|---|---|
| 03/09/18 | USD | 750,000 | 4,314 |
| 03/09/18 | USD | 500,000 | 1,598 |
| 03/13/18 | USD | 250,000 | 644 |
| 03/16/18 | USD | 500,000 | 1,422 |
| 03/16/18 | USD | 250,000 | 1,536 |
| 03/21/18 | USD | 200,000 | 1,428 |
| 06/20/18 | GBP | 75,000 | 37 |
| 06/22/18 | USD | 875,000 | 2,940 |
| 07/11/18 | USD | 600,000 | 1,341 |
| 07/13/18 | USD | 625,000 | 870 |
| 07/27/18 | USD | 475,000 | 789 |
| 08/03/18 | HKD | 2,000,000 | 1,224 |
| 08/03/18 | USD | 250,000 | 276 |
| 08/03/18 | USD | 250,000 | 762 |
| 08/03/18 | USD | 500,000 | 1,447 |
| 09/05/18 | USD | 250,000 | 360 |
| 09/10/18 | USD | 500,000 | 515 |
| 09/21/18 | USD | 350,000 | 2,364 |
| 12/19/18 | USD | 250,000 | 380 |
| 01/25/19 | USD | 250,000 | 510 |
| 01/25/19 | USD | 250,000 | 273 |

16. According to the documents, in total, borrowers purportedly pledged 25,030 bottles of wine as collateral for the Reviewed Loans.

17. According to a representative of Storage Facility-1, in sum and substance and in part: (i) Bordeaux Cellars had an account at Storage Facility-1; (ii) the main

contact for Bordeaux Cellars was the defendant STEPHEN BURTON; and (iii) Burton contacted Storage Facility-1 on or about January 13, 2019, asked to have all of the wines in Bordeaux Cellars' possession transported to Storage Facility-2, and closed the storage account at Storage Facility-1.

18.     I have reviewed records from the Storage Facility-1, which show that Bordeaux Cellars had an account at Storage Facility-1 from in or about October 2013 to in or about January 2019.  The records contain an inventory of the specific bottles of wine that Bordeaux Cellars had in its possession at the Storage Facility-1 (the "Inventory List"). According to the Inventory List, on or about and between March 9, 2018 and January 25, 2019, the dates of the Reviewed Loans, Bordeaux Cellars had in its custody at Storage Facility-1, in total, between 217 and 2,262 bottles of wine.

19.     I have compared the number of bottles of wine pledged as collateral to secure the Reviewed Loans to the number of bottles of wine in the Inventory List as of the dates of each of the Reviewed Loans.  As set forth in the table below, the records show that Bordeaux Cellars did not have custody of the Secured Wine as represented to the investor-lenders.  Specifically, the records show that: (i) for 10 of the Reviewed Loans, Bordeaux Cellars had fewer bottles in its custody at Storage Facility-1 than Bordeaux Cellars had represented to the investor-lenders were in its possession to secure that specific loan; (ii) at no time did Bordeaux Cellars have in its custody at Storage Facility-1 the number of bottles of wine that it had represented were there securing the Reviewed Loans.  In fact, between March 9, 2018 and January 25, 2019, in the aggregate, Bordeaux Cellars represented that it had between 5,087 and 22,768 more bottles of wine in its possession at Storage Facility-1 than were actually present there.

| Date | Currency | Loan Amount | Bottles Pledged as Secured Wine | Running Total of Bottles Pledged as of Loan Date | Bottles on Inventory List as of Loan Date |
|---|---|---|---|---|---|
| 03/09/18 | USD | 750,000 | 4,314 | 5,304[6] | 217 |
| 03/09/18 | USD | 500,000 | 1,598 | 6,902 | 217 |
| 03/13/18 | USD | 250,000 | 644 | 7,546 | 217 |
| 03/16/18 | USD | 500,000 | 1,422 | 8,968 | 217 |
| 03/16/18 | USD | 250,000 | 1,536 | 10,504 | 217 |
| 03/21/18 | USD | 200,000 | 1,428 | 11,932 | 217 |
| 06/20/18 | GBP | 75,000 | 37 | 11,969 | 389 |
| 06/22/18 | USD | 875,000 | 2,940 | 14,909 | 437 |
| 07/11/18 | USD | 600,000 | 1,341 | 16,250 | 746 |
| 07/13/18 | USD | 625,000 | 870 | 17,120 | 776 |
| 07/27/18 | USD | 475,000 | 789 | 17,909 | 1,747 |
| 08/03/18 | HKD | 2,000,000 | 1,224 | 19,133 | 1,895 |
| 08/03/18 | USD | 250,000 | 276 | 19,409 | 1,895 |
| 08/03/18 | USD | 250,000 | 762 | 20,171 | 1,895 |
| 08/03/18 | USD | 500,000 | 1,447 | 21,618 | 1,895 |
| 09/05/18 | USD | 250,000 | 360 | 20,988 | 1,949 |
| 09/10/18 | USD | 500,000 | 515 | 21,503 | 1,949 |
| 09/21/18 | USD | 350,000 | 2,364 | 23,867 | 1,950 |
| 12/19/18 | USD | 250,000 | 380 | 24,247 | 2,692 |
| 01/25/19 | USD | 250,000 | 510 | 24,757 | 2,262 |
| 01/25/19 | USD | 250,000 | 273 | 25,030 | 2,262 |

20. I have compared the specific bottles in the Inventory List to the lists of Secured Wine securing each of the Reviewed Loans. For each loan, one or more bottles of wine represented to be Secured Wine, were not present on the Inventory List at the time the

---

[6] I have reviewed documents for a loan for $250,000 dated September 1, 2017 for which 990 bottles of wine were pledged as collateral. The loan was due to be repaid on August 31, 2018. Because Bordeaux Cellars had represented that the Secured Wine for this loan was being held at Storage Facility-1 as of the date of the loan, I have included the 990 bottles in this column. Because the loan was due on August 31, 2018, I have reduced the number of pledged bottles by 990 for loans made after that date. Even if the 990 bottles were not included in these calculations, Bordeaux Cellars still would have had fewer bottles in its custody at Storage Facility-1 than were actually present there on the dates of the loans.

loan was made.  For example, the list of Secured Wine for the $500,000 loan dated March 9, 2018 included 24 bottles of 1990 Chateau Lafleur Pomerol, with a total estimated value of $32,135.  According to the Inventory List from Storage Facility-1, Bordeaux Cellars never had any bottles of 1990 Chateau Lafleur Pomerol in its custody at Storage Facility-1.  In another example, the list of Secured Wine for the £75,000 loan dated June 14, 2018 included one bottle of 1999 Domaine de la Romanee-Conti Romanee Conti Monopole, with a total estimated value of £15,439.  According to the Inventory List from Storage Facility-1, Bordeaux Cellars never had any bottles of 1999 Domaine de la Romanee-Conti Romanee Conti Monopole in its custody at Storage Facility-1.  In a third example, the list of Secured Wine for a $250,000 loan dated January 25, 2019 included 36 bottles of 2001 Domaine Jean-Francois Coche-Dury Corton-Charlemagne, with a total estimated value of $179,380.  According to the Inventory List from Storage Facility-1, Bordeaux Cellars never had any bottles of 2001 Domaine Jean-Francois Coche-Dury Corton-Charlemagne in its custody at Storage Facility-1.

21.     The Reviewed Loans were made by eight different investor-lenders to 19 different borrowers.  Although some of the investor-lenders for Reviewed Loans received payments of interest, none received their principal back at the end of the loan period.

22.     On or about February 14, 2019, the defendant STEPHEN BURTON was arrested in the United Kingdom for money laundering.  At the time of BURTON's arrest, he was in possession of, among other things, approximately 9 kilograms of gold ingots and coins, expensive watches, banking cards, more than 500 lottery tickets, more than £53,000 cash, more than €14,000 cash and false identification documents.

23. On or about February 18, 2019, law enforcement officers in the United Kingdom searched Storage Facility-2 pursuant to a warrant for property in the name of Bordeaux Cellars or the defendant STEPHEN BURTON. No wine in the names of BURTON or Bordeaux Cellars was present at Storage Facility-2.

24. As a result of the fraudulent scheme, the Victims lost, in total, approximately $8.2 million in principal payments owed on the Reviewed Loans.

25. Because public filing of this document could result in a risk of flight by the defendants, who have not yet been apprehended, as well as jeopardize the government's investigation, your deponent respectfully requests that the complaint and arrest warrant be filed under seal.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so that the defendants STEPHEN BURTON and JAMES WELLESLEY may be dealt with according to law.

WILLIAM A. BOLINDER
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone this
23 day of October, 2020

THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK