DCP:LHE
F. #2019R00489

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against –

STEPHEN BURTON,
   also known as "Andrew Pittman,"
  "Robert Allison" and
  "Derek Campbell," and
JAMES WELLESLEY,
   also known as "Andrew Fuller" and
  "Andrew Templar,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

**1:22-cr-00079(PKC)(PK)**
Cr. No. _____
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1349, 1956(h), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

    At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entity

        1.    Bordeaux Cellars was the trade name for two private limited companies,

Bordeaux Cellars, Limited and Bordeaux Cellars London Ltd., registered, respectively, in Hong

Kong and London, England.

        2.    The defendant STEPHEN BURTON, also known as "Andrew Pittman,"

"Robert Allison" and "Derek Campbell," was the founder and Chief Executive Officer of

Bordeaux Cellars.

3.     The defendant JAMES WELLESLEY, also known as "Andrew Fuller" and "Andrew Templar," was the Chief Financial Officer and Operations Manager of Bordeaux Cellars.

II.    The Fraudulent Scheme

4.     In or about and between June 2017 and February 2019 (the "relevant period"), the defendants STEPHEN BURTON and JAMES WELLESLEY, together with others, engaged in a scheme to defraud investors and potential investors in loans purportedly brokered by Bordeaux Cellars (the "Term Loans") and secured by specific bottles of wine owned by the purported borrowers.  In furtherance of the scheme, the defendants and their co-conspirators made material misrepresentations and omissions relating to, among other things: (1) the existence of the Term Loans; (2) Bordeaux Cellars' role as a broker of the Term Loans between investors and borrowers, and; (3) the existence, name, vintage, value and number of bottles of wine pledged as collateral for the Term Loans.

5.     During the relevant period, the defendants STEPHEN BURTON and JAMES WELLESLEY solicited investors at, among other places, investor conferences sponsored by a company that offers investment and financial advice on a website and in publications ("Company #1").  At the conferences, some of which were held in the United States and some in other countries, BURTON and WELLESELEY presented to prospective investors the opportunity to invest in Term Loans brokered by Bordeaux Cellars.  Specifically, BURTON and WELLESLEY represented to prospective investors the following: (1) that Bordeaux Cellars offered the opportunity to invest in Term Loans with individual borrowers or companies controlled by borrowers that would generate quarterly interest payments; (2) the Term Loans would be secured by a chattel mortgage on specific bottles of valuable wine owned by the

borrower; (3) Bordeaux Cellars would maintain custody of those specific bottles of wine pledged by the borrower, and would store them in an appropriate secure storage facility; and (4) each loan would be for an amount equal to, at most, 35 to 45 percent of the value of the specific bottles of wine pledged as collateral.

6.      Investors in the Term Loans, including residents of the Eastern District of New York, received documents relating to their investment, including a Loan Broker Agreement, a Facility Letter and a Loan Agreement and Chattel Mortgage Deed Over Wine.  These documents bore signatures of either or both of the defendants STEPHEN BURTON and JAMES WELLESLEY.

7.      The Loan Broker Agreement summarized the key terms of the loan and identified the name, vintage and number of bottles of wine pledged as collateral for that loan (the "Secured Wine").  Each Loan Broker Agreement provided, among other things, that the Secured Wine had been transferred into Bordeaux Cellars' custody at its storage facility, but that "immediately following draw-down [of the loan] the [Secured Wine] will be transferred into [the investor's] name under [Bordeaux Cellars'] custodian account." The Loan Broker Agreement further claimed that during the term of the loan, Bordeaux Cellars would monitor the value of the collateral to ensure that the security margin (i.e., the 35-45 percent ratio of loan value-to-collateral) would be maintained.

8.      The Facility Letters identified the name, vintage and number of bottles of wine pledged as the Secured Wine, and represented that (i) "the Secured Wines have been transferred into [Bordeaux Cellars'] custody and are held at [Bordeaux Cellars' storage facility "Storage Facility-1"] where the wines will be stored in your name pending completion of the Chattel Mortgage and the draw-down of the loan.  Thereafter title to the wines will be transferred

into our Custodian account and be held in the name of the Lender, subject to the rights and obligations set out in the Chattel Mortgage . . . ;" (ii) "[t]he Loan is offered on condition that the total sum outstanding is [35% to 45%] of the value of the Secured Wines" (i.e., the loan-to-value ratio); and (iii) if the amount outstanding compared to the value of the Secured Wine exceeded the specified loan-to-value ratio, and the borrower failed to take actions to restore the proper ratio, Bordeaux Cellars could sell the Secured Wine to repay the investor-lender or transfer the Secured Wine to the investor-lender.

9.      The Loan Agreement and Chattel Mortgage Deed Over Wine set out the terms of the loan and mortgage, identified the name, vintage and number of bottles of wine pledged as collateral for that loan (i.e., the Secured Wine), and provided, among other things, that: (i) the borrower granted a security interest, "by way of first legal mortgage" in the Secured Wine; (ii) a "precondition" of the loan was that "the Secured Wine has been received at the [Storage Facility-1];" (iii) Bordeaux Cellars "will hold the Secured Wine at the [Storage Facility-1] under its Custodian's account in the name of the Lender" during the term of the loan; and (iv) the "Secured Wine has been placed in the name of the Lender under the Custodian's account at the [Storage Facility-1.]"

10.      In total, the defendants STEPHEN BURTON and JAMES WELLESLEY induced investors to invest in excess of approximately $99.4 million into Term Loans purportedly brokered by Bordeaux Cellars.

11.      In reality, Bordeaux Cellars did not have custody over the Secured Wine. Specifically, inventory records reflect that Bordeaux Cellars had thousands fewer bottles of wine in its custody than the loan documents reflected. In addition, many of the specific bottles identified as collateral in the loan documents were never in Bordeaux Cellars' custody.

4

12.     The proceeds of the Term Loans were not directed to individual borrowers as promised in the loan documents.  Instead, they were used to make payments to other Bordeaux Cellars investors and/or misappropriated by the defendants STEPHEN BURTON and JAMES WELLESLEY.

13.     From June 2017 until approximately December 2018, investors in the Bordeaux Cellars Term Loans received interest payments as promised, and at the end of the term of their loan had the choice to either receive back their principal or roll it into another loan. Several investors invested in multiple loans purportedly brokered by Bordeaux Cellars.  In approximately February 2019, all interest payments made on the Term Loans stopped, and the investors in the Term Loans with loans outstanding received no principal thereafter.  Notably, the interest payments all stopped in or around February 2019, even though the Term Loans were purportedly issued to an array of different borrowers and secured by different collections of valuable wine.

COUNT ONE
(Wire Fraud Conspiracy)

14.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

15.     In or about and between June 2017 and February 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHEN BURTON, also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," and JAMES WELLESLEY, also known as "Andrew Fuller" and "Andrew Templar," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investors and potential investors in Term Loans brokered by

Bordeaux Cellars, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Wire Fraud)

16.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

17.     On or about July 8, 2018, within the Eastern District of New York and elsewhere, the defendant JAMES WELLESLEY, also known as "Andrew Fuller" and "Andrew Templar," together with others, did knowingly and intentionally devise a scheme and artifice to defraud Investor #1, an individual whose identity is known to the Grand Jury, and to obtain money and property from Investor #1 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, WELLESLEY transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: an email sent by WELLESLEY to Investor #1 attaching a valuation of wine purportedly securing a Term Loan.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

6

## COUNT THREE
(Wire Fraud)

18.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

19.     On or about July 19, 2018, within the Eastern District of New York and elsewhere, the defendant STEPHEN BURTON, also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," together with others, did knowingly and intentionally devise a scheme and artifice to defraud Investor #1, an individual whose identity is known to the Grand Jury, and to obtain money and property from Investor #1 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, BURTON transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: an email sent by BURTON to Investor #1 confirming the existence of a Term Loan extended to a specifically identified borrower.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT FOUR
(Money Laundering Conspiracy)

20.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

21.     In or about and between June 2017 and February 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEPHEN BURTON, also known as "Andrew Pittman," "Robert Allison" and "Derek Campbell," and JAMES WELLESLEY, also known as "Andrew Fuller" and "Andrew Templar," together with others, did knowingly and intentionally conspire to conduct one or more

7

financial transactions in and affecting interstate and foreign commerce, to wit: checks and electronic payments, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of said specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH THREE

22.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

23.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

8

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

24.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such.

25.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_Deighton Reid_
FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK